IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| METRO TECH, CORP.,<br><br>        Plaintiff<br><br>             v.<br><br>TUV RHEINLAND OF NORTH AMERICA,<br>et al.,<br><br>        Defendants | CIVIL NO. 09-1824 (JP) |

**OPINION AND ORDER**

Before the Court is Defendant TUV Rheinland of North America, Inc.'s ("TUV") motion *in limine* to preclude the testimony of Plaintiff's economist expert Juan Lara-Fontánez, Ph.D.[1]  For the reasons stated herein, Defendant's motion is **DENIED**.

I.   **LEGAL STANDARD**

Under Rule 702, the Court, as gate-keeper, has "the responsibility of ensuring that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)).  Federal Rule 702, which governs the admission of expert testimony, provides:

---

1.    Also pending before the Court is Plaintiff's Motion to Strike Defendant's Motion *in Limine* (**No. 66**).  In light of Defendant's shortened motion *in limine* filed at Docket No. 72, the Court finds Plaintiff's motion **MOOT**.

CIVIL NO. 09-1824 (JP)          -2-

>     If scientific, technical, or other specialized knowledge
>     will assist the trier of fact to understand the evidence
>     or to determine a fact in issue, a witness qualified as an
>     expert by knowledge, skill, experience, training, or
>     education, may testify thereto in the form of an opinion
>     or otherwise, if (1) the testimony is based upon
>     sufficient facts or data, (2) the testimony is the product
>     of reliable principles and methods, and (3) the witness
>     has applied the principles and methods reliably to the
>     facts of the case.

Fed. R. Evid. 702; Pagés-Ramírez v. Ramírez-González, 605 F.3d 109, 113 (1st Cir. 2010).

In deciding the admissibility of an expert's testimony, the Daubert factors may assist a trial court. Mooney, 315 F.3d at 62. The four Daubert factors are:

>     (1) whether the theory or technique can be and has been
>     tested; (2) whether the technique has been subject to peer
>     review and publication; (3) the technique's known or
>     potential rate of error; and (4) the level of the theory
>     or technique's acceptance within the relevant discipline.

Id. The Daubert factors, however, "are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability." Id.; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 139 (1999).

The First Circuit Court of Appeals has stated that "[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony - a question to be resolved by the jury." Int'l Adhesive Coating, Co. v. Bolton Emerson Int'l, 851 F.2d 540, 545 (1st Cir. 1988) (noting that "the

CIVIL NO. 09-1824 (JP)            -3-

fact that an expert's opinion may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility"). Moreover, the First Circuit explained that "Daubert does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct."  U.S. v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006) (quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

## II. ANALYSIS

In its motion, Defendant argues that Dr. Juan Lara-Fontánez ("Dr. Lara") should be precluded from testifying because he lacks the necessary training, experience and skill and his report and testimony fail to adhere to the methods and procedures of science required by Daubert.  The Court will now consider Defendant's arguments.

### A. Knowledge, Skill, Training, Experience and/or Education of Plaintiff's Expert

First, Defendant argues that Dr. Lara does not have the necessary knowledge, skill, training, experience and/or education to render his opinion.  In support, Defendant points to Dr. Lara's testimony.  Defendant states that Dr. Lara (1) prior to this case, had never been retained to calculate lost profits of a corporation; (2) has no publications or papers on business valuation techniques,

CIVIL NO. 09-1824 (JP)           -4-

valuation of economic damages, lost profits, or any other area relevant to this case; and (3) has never taken or taught courses or seminars related to methodologies for valuing economic damages and lost profits.  Also, Defendant contends that this is the first time Dr. Lara has applied any methodology to assess a company's economic damages.  According to Defendant, Dr. Lara as an economist, and not an accountant, is unaccustomed to working with the financials of companies.

Plaintiff opposes Defendant's motion by presenting evidence that Dr. Lara is qualified to render an opinion in this case.  Plaintiff presents evidence that Dr. Lara holds a Master's degree and a Ph.D. from the State University of New York at Stony Brook and a B.A. degree in Economics from the University of Puerto Rico.  Furthermore, Plaintiff presented evidence that Dr. Lara has taught university level courses in the fields of micro and macro economics and international trade since 1977.  In addition, Dr. Lara has worked for many firms, such as Wharton Economic Forecasting Associates, Inc. as a director of Latin American Economic Services, where he supervised economists that forecasted economic data for various countries. He is currently working at the University of Puerto Rico as a professor of economic development and economic policy in Latin America and for Advantage Business Consulting.  Dr. Lara testified

CIVIL NO. 09-1824 (JP)          -5-

that there is no specialty in the field of economics to value economic damages.

Plaintiff points to the fact that Dr. Lara has published works, including a chapter in the United Nations book on Puerto Rico's economy. Dr. Lara testified that he has been retained in at least 22 cases as an expert. Plaintiff presented testimony that Dr. Lara has previously been retained to perform a damages evaluation. Dr. Lara explained that this might be the first time he is calculating economic damages for a corporation on behalf of a Plaintiff. However, in the past, Dr. Lara was engaged to critique damages claims by other experts. Dr. Lara has evaluated claims for economic damages for lost business opportunities, lost income and has performed evaluations of businesses. Dr. Lara has never been disqualified as an expert economist.

### B.   Reliability of Dr. Lara's Expert Opinion

In addition, Defendant argues that Dr. Lara's expert opinion is unreliable because Dr. Lara fails to evaluate actual lost profits. Defendant states that Dr. Lara did not consider whether the business deals in the Dominican Republic and CAFTA[2] countries that Plaintiff allegedly lost were profitable. Defendant also argues that even if evaluating the profits of the lost business was not necessary because

---

2.   The term "CAFTA countries" refers to Costa Rica, El Salvador, Guatemala, Honduras, and Nicaragua - countries which are parties to the Dominican Republic-Central America Free Trade Agreement ("DR-CAFTA").

CIVIL NO. 09-1824 (JP)          -6-

of Dr. Lara's business valuation techniques, Dr. Lara testified that he needed more data to evaluate Plaintiff's profits.

Plaintiff does not directly address Defendant's arguments that Dr. Lara failed to evaluate actual lost profits and that he did not have enough data to evaluate the profitability of the business deals that Plaintiff claims to have lost.

### C.     Methodology used by Plaintiff's Expert

Defendant states that Dr. Lara's methodology consisted of three steps: (1) "deciding what was the confirmed business that was lost"; (2) determining that "the loss of these business deals is the same as 'killing' a business that has the capacity of producing annual gross revenue equal to that amount"; and (3) using business valuation techniques that required applying the multipliers from Ibbotson Cost of Capital, 2008 Yearbook to the lost deals.  Defendant argues that Dr. Lara's methodology fails the Daubert test because he does not know whether the methodology he used is subject to peer review or publication, whether there are standards that have been used by other economists to apply to a case like to this one, the potential rate of error for this methodology, or whether the methodology is the generally accepted method of quantifying damages in the economic or legal community.

Plaintiff counters that it may have been Dr. Lara's first time using the Ibbotson Price/Sales Equity Valuation Ratio methodology for

CIVIL NO. 09-1824 (JP)          -7-

calculating damages; however, other experts have used the method before and cites to other cases where experts use Ibbotson. As for peer review, Plaintiff argues that Dr. Ibbotson's work, which was relied upon by Dr. Lara, is published and subject to peer review.

### D. Reliability of Data Used to Assess Loss of Business in the Dominican Republic, Puerto Rico and CAFTA Countries

Defendant also argues that the data Dr. Lara relied on to assess the loss of business in the Dominican Republic and Puerto Rico was unreliable because Dr. Lara did not confirm with customers or with Plaintiff whether any of the quotes were actually accepted. Defendant argues that Dr. Lara's fundamental assumptions were incorrect because he assumed that the quotes had been accepted. Defendant presents testimonial evidence that Dr. Lara would not have included quotes that were not accepted if José A. Cotto ("Cotto") of CMCXpert Group, Inc., Plaintiff's contact in the region, had told Dr. Lara that he was unaware of whether the projects associated with the quotes submitted were ever completed.

With regard to the damages associated with the other CAFTA countries, Defendant cited to the testimony of Dr. Lara, who testified that he did not see any contracts or quotes for business in Central America. Defendant argues that Dr. Lara was unfamiliar with the specific industries in these countries and what Plaintiff's

CIVIL NO. 09-1824 (JP)          -8-

market would have been. Dr. Lara used data provided by Manchester Trade, Ltd., but was also unable to verify the information.

Defendant argues that Dr. Lara also made incorrect assumptions when analyzing the business lost in Puerto Rico. He again did not verify whether the quotes were accepted. Defendant also states that Dr. Lara assumed that the business in Puerto Rico would not resume and did not verify whether he applied the Ibbotson multipliers from different Standard Industrial codes ("SICs") correctly. Dr. Lara also failed to analyze information such as costs, expenses, cash flow and book value of comparable companies.

In opposition, Plaintiff argues that Dr. Lara reviewed extensive data as to each of the areas where Plaintiff claims damages. For the evaluation of damages in the Dominican Republic, Dr. Lara was provided with information relating to Plaintiff and its business in the Dominican Republic, the lost IIBI Contract, quotes relating to IIBI that were lost as per the IIBI Contract and lost quotes related to other potential customers in the Dominican Republic.

Plaintiff presents an email exchange between Dr. Lara and Cotto to support that Dr. Lara did have a reasonable basis on which to make his damages calculation. Dr. Lara received confirmation from Cotto that the quotes pertaining to the Riquel Group, Panzardi & Associates and IIBI were "solid ones waiting for the financing phase of the Inter-American Development Bank, the Dominican Republic government

CIVIL NO. 09-1824 (JP)            -9-

or the United States." In his report, Dr. Lara explains that "the consultants corroborated the figures provided by Mr. Cay with two sources. First, there is the service contract between Metro Tech and [IIBI] for the services indicated by Mr. Cay" and "[s]econd, the consultants contacted Mr. José A. Cotto, Principal Partner of CMCExpert Group, Inc. . . . who channeled business to Metro Tech from his own client base in the Dominican Republic."

As to the losses in Puerto Rico, Plaintiff states that Dr. Lara was provided with information regarding long-term clients who either cancelled their contracts or refused to issue new purchase orders after Defendant's delay in issuing Plaintiff's ISO 17025 certificate.

Regarding the loss of future business in the CAFTA countries, Dr. Lara testified that he researched macro economic data. Dr. Lara calculated damages using Ibbotson and data provided by Manchester Trade, Ltd.

Plaintiff argues that Dr. Lara applied the principles and methods reliably to the facts because he followed Ibbotson methodology to calculate damages. Plaintiff explains that Dr. Lara divided the Dominican Republic damages claims in two parts. The first part of the damages amounts to approximately $1,805,000 million for the lost business relating to IIBI. Plaintiff stated that for the second part of the analysis Dr. Lara looked at the quotes issued by Plaintiff to companies in the Dominican Republic and assessed the

CIVIL NO. 09-1824 (JP)          -10-

quotes as losses due to Defendant's breach of contract and applied the Ibbotson ratio calculation.  Plaintiff states that it presented evidence showing that, after the cancellation of the IIBI Contract, Plaintiff was unable to do business in the Dominican Republic. Plaintiff argues that Dr. Lara's methodology is the proper method to illustrate to the jury how to value Plaintiff's loss of potential future business in the Dominican republic and the CAFTA countries.

In determining whether to permit the testimony of an expert, the First Circuit noted that "an expert with appropriate credentials and an appropriate foundation for the opinion at issue must be permitted to present testimony as long as the testimony has a 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  Pagés-Ramírez, 605 F.3d at 114 (quoting Fed. R. Evid. 401).

As such, the Court finds that, given the experience and qualifications of Dr. Lara, the testimony of an expert such as Dr. Lara will aid the jury in determining the proper level of damages should they find for Plaintiff. Whether the factual basis for Dr. Lara's damages calculation is weak is a matter affecting the credibility of the witness' testimony, which is an issue for the jury to resolve.  Defendant shall have an opportunity at trial to cross-examine this witness as to the data and his conclusions.

CIVIL NO. 09-1824 (JP)          -11-

Accordingly, the Court hereby **DENIES** Defendant's motion *in limine* to preclude the testimony of Dr. Lara.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, this 14th day of October, 2010.

                                       s/Jaime Pieras, Jr.
                                          JAIME PIERAS, JR.
                              U.S. SENIOR DISTRICT JUDGE